UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARTIN HENSON,

                    Plaintiff,

      v.

OMNICOM GROUP INC.; and EG +
WORLDWIDE,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civil Action No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiff MARTIN HENSON ("Plaintiff"), by and through his attorneys, VALLI KANE & VAGNINI LLP, brings this action for damages and other legal and equitable relief from OMNICOM GROUP ("Omnicom") and EG + WORLDWIDE ("EG +") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq.* ("§ 1981"); the New York State Human Rights Law ("NYSHRL"), New York City Human Rights Law ("NYCHRL") and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

      1.    This is an action brought by Plaintiff against Defendants for hostile work environment, race discrimination, failure to promote, and unlawful termination, in retaliation for Plaintiff engaging in protected activities, in violation of Title VII, § 1981, and the NYSHRL.

## JURISDICTION AND VENUE

      2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief: (i) under any Act of

Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; (iii) under Title VII, codified at 42 U.S.C. §§ 2000e *et seq.*, as amended and (iv) and under § 1981, codified at 42 U.S.C. §§ 1981 *et seq.*, as amended.

3. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## PARTIES

5. Plaintiff is a person who has been aggrieved by Defendants' actions. He is and has been, at all relevant times, an African-American (alternatively, "Black") male citizen of the United States of America and is a resident of the state of New York.

6. Plaintiff has at all relevant time been a covered "employee" pursuant to Title VII, the NYSHRL and the NYCHRL.

7. Omnicom is a global media and marketing communications company headquartered in New York, NY.

8. Omnicom's principal place of business is located at 437 Madison Avenue, New York, NY.

9. Omnicom transacted and continues to transact business within New York by owning and operating several agencies.

10. EG+ is a wholly owned subsidiary of Omnicom, a publically traded company.

11. EG+'s principal place of business is located at 1285 6th Avenue, New York, NY 10019.

12. EG+ transacted and continues to transact business within the State of New York by owning and operating…

13. EG+ employs more than one hundred (100) employees.

14. At all relevant times, EG+ has been a covered "employer" pursuant to Title VII and the NYSHRL.

15. At all relevant times, Omnicom has been a covered "employer" pursuant to Title VII and the NYSHRL.

16. At all relevant times, Omnicom and EG+ were joint employers of Plaintiff.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

17. Plaintiff has timely filed a Charge of Discrimination alleging, inter alia, hostile work environment and retaliation with the Equal Employment Opportunity Commission ("EEOC").

18. Plaintiff received his Notice of Right to Sue letter from the EEOC within ninety (90) days prior to the filing of this complaint.

## STATEMENT OF FACTS

19. Omnicom is a global marketing and communications company primarily located in New York with several locations worldwide. Omnicom is the parent organization to several global advertising agencies under its network, including BBDO Worldwide ("BBDO"), DDB Worldwide ("DDB"), and TWBA Worldwide ("TWBA").

20. In or around April 2014, Omnicom launched EG+ as part of its global enterprise. EG+ is a production agency which provides strategies and implementation for asset production,

3

management, distribution, and ROI quantification. At all relevant times, Omnicom excised control over, and directed, the affairs of EG+.

21. In or around April 2014, Plaintiff began employment for TBWA as an Editor and Director of Photography. Plaintiff's starting salary was approximately $90,000.00 per year.

22. Plaintiff was hired by Managing Director George Ashbrook ("Mr. Ashbrook") to work for TBWA.

23. During his tenure as an Editor and Director of Photography for TBWA, Plaintiff received recognition for winning the most new business in one year in the history of the company in 2015. Plaintiff maintained a positive performance record and his portfolio for TBWA included campaigns for its marquee clients, such as Travelers, Thomson Reuters, Go Daddy, and H&M, among others.

24. In or around January 2016, Plaintiff received a merit-based compensation increase as a result of his performance in 2015. Plaintiff's salary increased to approximately $120,000.00 per year. Plaintiff continued to perform positively in his role with the company.

25. Shortly thereafter, TBWA purportedly merged into parent company EG+, a subsidiary and affiliate of Omnicom. Following the merger, Plaintiff was brought over from TBWA to work at EG+ in a similar capacity as Editor, Cinematographer, and Director. Plaintiff's employment was transferred from TBWA to EG+, and as an employee of EB+ Plaintiff was permitted to keep all of his vacation days that he had obtained while employed by TBWA.

26. Despite his outstanding track record with TBWA, Plaintiff was subjected to a racially hostile work environment while at EG+.

27. In or around August 2016, EG + relocated to the BBDO office location. BBDO, a subsidiary of Omnicom, was located at 1285 6th Avenue, New York, NY.

4

28. During the relevant time period, Mr. Henson was the only Black employee working in his department in the new location, and the only Black employee ever hired by EG+ in Production.

29. In October 2016, an office wide Halloween party was held at EG+. At this office party, a costume contest was held in which first place was awarded to a White male employee dressed in a traditional Mexican sombrero and fake mustache, with a sign affixed to his costume that said "Bad". Following the contest, an office wide email went out congratulating the "The Bad Hombre" on his grand prize win by Human Resources Associate, Angie Mack ("Ms. Mack").

30. Subsequently, the sign reading "Bad" hung from an employee's chair for an entire week. This employee sat in proximity to Mr. Henson.

31. As the only Black employee in the building, Mr. Henson was made especially uncomfortable by the inappropriate and discriminatory costume.

32. Following this incident Plaintiff wrote an e-mail to Ms. Mack on November 15, 2016, complaining about the lack of diversity within the company and his discomfort with the "Bad Hombre" Halloween costume. Plaintiff expressed to Ms. Mack that he felt the costume was racially insensitive and discriminatory.

33. In the e-mail, Plaintiff also expressed his concern with being explicitly targeted in a group setting by Ms. Mack to attend an event for "people of color" in the industry. Plaintiff previously had a conversation with Ms. Mack, which he believed to be confidential, where he freely expressed his concerns about being a racial minority in the production industry and specifically at EG+. In the e-mail, Plaintiff explained to Ms. Mack that he was horrified their conversation about race and diversity was made public by announcing such an event openly amongst other employees.

34. Plaintiff explained to Ms. Mack that he did not wish to become the spokesperson for racial diversity, and how such a title made him feel concerned for his future employment at the company.

35. As the only Black employee in the company, Plaintiff feared that other employees would be uncomfortable or hesitant to work with him if they felt he complained about a lack of diversity at EG+. As such, Plaintiff requested Ms. Mack no longer associate him with any push for diversity in the workplace.

36. Despite his complaint to Ms. Mack, Plaintiff still found himself subject to a racially hostile work environment.

37. For example, in or around February 2017, Plaintiff's Producer Heath Schoengold ("Mr. Schoengold") told Plaintiff in front of his coworkers and Producers "You are the token black employee, if you do not know that you are either the stupidest or the most naïve employee ever".

38. Despite Plaintiff's twenty (20) plus years of experience in the industry, Mr. Schoengold consistently treated Plaintiff like he was not qualified for his position. This substantially hindered Plaintiff's ability to effectively perform in his role as projects were delegated to him by Mr. Schoengold.

39. Furthermore, due to the proximity of their offices Plaintiff was able to hear Mr. Schoengold and other Producers make derogatory racial comments towards him while in their office. For example, on several occasions Plaintiff was able to hear "nigger" being used through the walls. As the only Black employee in the office, Plaintiff understood these comments to be directed towards him. Plaintiff complained about these derogatory comments, and Defendants' response was to place a sound-dampening barrier between Plaintiff and the other producers instead of remediating the discriminatory conduct.

40. From this point onwards, Mr. Schoengold and other Producers stopped delegating projects to Plaintiff despite his merit and positive past performance with Omnicom. The opportunity for Plaintiff to excel at EG+ was significantly diminished as a result.

41. Plaintiff reached out to several high level officers at EG+ to express his concern for his future employment with the company due to isolation and racially disparate treatment from his Producers.

42. In or around April 2017, Plaintiff spoke to Chief Diversity Officer Doug Melville ("Mr. Melville") expressing that he felt ostracized since being transferred to EG+ from TBWA.

43. Plaintiff also met with Chief Financial Officer De Ann Nicholas ("Ms. Nicholas") in April 2017 to discuss his concerns. Plaintiff specifically pointed out to Ms. Nicholas that his trajectory had decreased since working with his new Producers and moving to EG+. Plaintiff expressed that he was feeling marginalized due to his race, and that he is able to hear his Producers constantly use the word "nigger" through the office walls.

44. Furthermore, between May 2017 and June 2017 Plaintiff met with Mr. Melville on several occasions to discuss his underutilization at EG+ as a result of a hostile racial environment. Plaintiff expressed to Mr. Melville that the environment at EG+ did not allow him to succeed as the only Black Producer in the office, and that Human Resources (HR) and other outlets have not provided him any assistance.

45. On or around July 31, 2017, Plaintiff complained to Mr. Ashbrook about the disparate treatment from his Producers at EG+. Plaintiff told Mr. Ashbrook that he was being avoided by his own team, and that his Producers refused to work with him. After meeting with Mr. Ashbrook in person to discuss his complaint, Plaintiff told him that he was being discriminated

7

against because of his race and that his Producers used racial slurs in reference to him on several occasions.

46.     On or around September 6, 2017, Plaintiff sent a final email expressing his complaints to Mr. Melville. Plaintiff explained that as the only Black male to ever work in Production at EG+, he was facing racial discrimination from his superiors.

47.     Plaintiff stated that since moving to EG+, his productivity has dramatically decreased as a result of his team refusing to work with him on account of his race. Plaintiff also expressed feeling blacklisted, and that other less experienced freelancers received preferential treatment over him despite him being highly qualified for such projects.

48.     Following his complaint, in October 2017 Plaintiff was contacted by Omnicom Corporate Counsel Cameron Bruce ("Ms. Bruce") to discuss his claims.

49.     Plaintiff was asked to provide the names of offenders at EG+; however due to fear of retaliation he was unable to do so. Previously when voicing his concerns to Ms. Mack and Human Resources, Plaintiff received no assistance. Plaintiff feared the same result if he were to provide names to Ms. Cameron. As a result, he was told there was nothing they could do to help his situation.

50.     Despite complaining directly to the Chief Officer of Diversity, Plaintiff's circumstance did not change and he continued to be subject to a racially hostile work environment.

51.     Between November 2017 and February 2019, Plaintiff was further ostracized and ultimately left to fail. During this time, management stopped delegating projects to Plaintiff, his performance reports were suspended, all employees and freelancers were given new laptops except for Plaintiff, and his classes in digital animation were revoked.

52. Additionally, a new Freelance Editor was brought in who repeatedly received projects instead of Plaintiff despite his twenty (20) plus years of experience.

53. On February 4, 2019, Plaintiff was terminated from his position at EG+.

54. The stated reason for Plaintiff's termination was force reduction. Notably, other less experienced Production staff was not similarly terminated.

55. Accordingly, Plaintiff's termination was a result of racial discrimination.

56. Immediately following Plaintiff's termination, on February 4, 2019 Plaintiff engaged in a discussion with his former Supervisor, Damisi Rosemond ("Mr. Rosemond"). During this discussion, Mr. Rosemond stated to Plaintiff that Mr. Melville had mishandled Plaintiff's complaint of discrimination, improperly escalating the situation instead of taking appropriate steps to remediate the complaint.

57. After Plaintiff's termination, Plaintiff filed a time Charge of Discrimination with the EEOC, during June 2019.

58. Following the filing of his Charge, in October 2019 Plaintiff was contacted by his former Mr. Rosemond. Plaintiff was informed by Mr. Rosemond that Plaintiff was <u>not</u> actually fired due to a "reduction in force," but because he was viewed as a liability due to his complaints.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.
### (AGAINST ALL DEFENDANTS FOR RETALIATION)

59. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

60. Plaintiff was subjected to a racially charged, hostile work environment.

61. Plaintiff engaged in protected activity by complaining internally about the racially hostile and retaliatory work environment which he was subjected to by Defendants.

9

62. Defendants had actual knowledge that Plaintiff engaged in protected activities.

63. In direct retaliation for Plaintiff engaging in protected activities, Defendants terminated him.

64. Defendants conduct was in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

65. Plaintiff's requests for relief are set forth below.

### AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
### Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 *et seq.*
### (AGAINST ALL DEFENDANTS FOR RETALIATION)

66. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

67. Plaintiff engaged in a protected activity by complaining internally about the racially hostile and retaliatory work environment Defendants subjected him to.

68. Defendants had actual knowledge that Plaintiff engaged in protected activities.

69. In direct retaliation for Plaintiff engaging in protected activities, Defendants terminated him.

70. Defendants' conduct was in violation of Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 *et seq.*

71. Plaintiff's requests for relief are set forth below.

### AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
### The New York State Human Rights Law
### (AGAINST ALL DEFENDANTS FOR RETALIATION)

72. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

73. Plaintiff engaged in a protected activity by complaining internally about the racially hostile and retaliatory work environment Defendants subjected him to.

74. Defendants had actual knowledge that Plaintiff engaged in protected activities.

75. In direct retaliation for Plaintiff engaging in protected activities, Defendants terminated him.

76. Defendants' conduct was in violation of The New York Human Rights Law.

77. Plaintiff's requests for relief are set forth below.

**AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York City Human Rights Law**
**(AGAINST ALL DEFENDANTS FOR RETALIATION)**

78. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

79. Plaintiff engaged in a protected activity by complaining internally about the racially hostile and retaliatory work environment Defendants subjected him to.

80. Defendants had actual knowledge that Plaintiff engaged in protected activities.

81. In direct retaliation for Plaintiff engaging in protected activities, Defendants terminated him.

82. Defendants' conduct was in violation of The New York City Human Rights Law.

83. Plaintiff's requests for relief are set forth below.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.**
**(AGAINST ALL DEFENDANTS FOR HOSTILE WORK ENVIROMENT)**

84. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

85. Plaintiff is a member of a protected class.

86. The conduct alleged herein violates Title VII, as amended, 42 U.S.C. §§ 2000e *et seq.* as Defendants have engaged in racial harassment and have created, maintained and condoned a hostile work environment with respect to Plaintiff.

87. The conduct Plaintiff alleges is sufficiently severe or pervasive to alter the terms and conditions of employment by creating an abusive working environment.

88. Plaintiff's requests for relief are set forth below.

### AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF
### The Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 *et seq.*
### (AGAINST ALL DEFENDANTS FOR HOSTILE WORK ENVIROMENT)

89. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

90. Plaintiff is a member of a protected class.

91. The conduct alleged herein violates the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 *et seq.* as Defendants have engaged in racial harassment and have created, maintained and condoned a hostile work environment with respect to Plaintiff.

92. The conduct Plaintiff alleges is sufficiently severe or pervasive to alter the terms and conditions of employment by creating an abusive working environment.

93. Plaintiff's requests for relief are set forth below.

### AS AND FOR A SEVENTH CAUSE OF ACTION FOR A VIOLATION OF
### The New York State Human Rights Law
### (AGAINST ALL DEFENDANTS FOR HOSTILE WORK ENVIRONMENT)

94. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

95. Plaintiff is a member of a protected class.

96. The conduct alleged herein violates the New York Human Rights Law as Defendants have engaged in racial harassment and has created, maintained and condoned a hostile work environment with respect to Plaintiff.

97. The conduct Plaintiff alleges is sufficient enough to alter the terms and conditions of employment by creating an abusive working environment.

98. Plaintiff's requests for relief are set forth below.

### AS AND FOR A EIGHTH CAUSE OF ACTION FOR A VIOLATION OF
**The New York City Human Rights Law**
**(AGAINST ALL DEFENDANTS FOR HOSTILE WORK ENVIRONMENT)**

99. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

100. Plaintiff is a member of a protected class.

101. The conduct alleged herein violates the New York City Human Rights Law as Defendants have engaged in racial harassment and has created, maintained and condoned a hostile work environment with respect to Plaintiff.

102. The conduct Plaintiff alleges is sufficient enough to alter the terms and conditions of employment by creating an abusive work environment.

103. Plaintiff's requests for relief are set forth below.

### AS AND FOR A NINTH CAUSE OF ACTION FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.**
**(AGAINST ALL DEFENDANTS FOR DISPARATE TREATMENT DISCRIMINATION)**

104. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

105. Plaintiff, a Black male, is a member of a protected class. Plaintiff was subject to discrimination on the basis of his race.

106. Defendants have discriminated against Plaintiff on the basis of his race by subjecting Plaintiff to disparate treatment by failing to prevent or remedy a racially discriminatory environment and by compensating Plaintiff at a lower rate than other comparable employees, performing the same work as Plaintiff, who are not members of Plaintiff's protected class. Specifically, Plaintiff was paid less compensation than Caucasian (alternatively, "White") employees who performed the same duties and responsibilities, despite Plaintiff's superior skill, knowledge, education, training, and performance of those duties.

107. One comparator to Plaintiff, an individual named Zane, was a white male with less skill and experience than Plaintiff, but who was compensated at a higher rate than Plaintiff despite performing identical work. Additionally, Plaintiff requested digital animation training that Defendants initially agreed to provide, then retracted, but the training was provided to Plaintiff's White comparators. Similarly, Plaintiff requested a computer, and was not provided with one, while his White comparators received new machines.

108. Defendants' conduct was in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

109. Plaintiff's requests for relief are set forth below.

### AS AND FOR A TENTH CAUSE OF ACTION FOR A VIOLATION OF
### The New York State Human Rights Law
### (AGAINST ALL DEFENDANTS FOR DISPARATE TREATMENT DISCRIMINATION)

110. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

111. Plaintiff, a Black male, is a member of a protected class. Plaintiff was subject to discrimination on the basis of his race.

112. Defendants have discriminated against Plaintiff on the basis of his race by subjecting Plaintiff to disparate treatment by failing to prevent or remedy a racially discriminatory environment and by compensating Plaintiff at a lower rate than other comparable employees, performing the same work as Plaintiff, who are not members of Plaintiff's protected class. Specifically, Plaintiff was paid less compensation than Caucasian (alternatively, "White") employees who performed the same duties and responsibilities, despite Plaintiff's superior skill, knowledge, education, training, and performance of those duties.

113. One comparator to Plaintiff, an individual named Zane, was a white male with less skill and experience than Plaintiff, but who was compensated at a higher rate than Plaintiff despite performing identical work. Additionally, Plaintiff requested digital animation training that Defendants initially agreed to provide, then retracted, but the training was provided to Plaintiff's White comparators. Similarly, Plaintiff requested a computer, and was not provided with one, while his White comparators received new machines.

114. Defendants' conduct was in violation of the New York State Human Rights Law.

115. Plaintiff's requests for relief are set forth below.

### AS AND FOR A ELEVENTH CAUSE OF ACTION FOR A VIOLATION OF
### The New York State City Rights Law
### (AGAINST ALL DEFENDANTS FOR DISPARATE TREATMENT DISCRIMINATION)

116. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

117. Plaintiff, a Black male, is a member of a protected class. Plaintiff was subject to discrimination on the basis of his race.

118. Defendants have discriminated against Plaintiff on the basis of his race by subjecting Plaintiff to disparate treatment by failing to prevent or remedy a racially discriminatory

environment and by compensating Plaintiff at a lower rate than other comparable employees, performing the same work as Plaintiff, who are not members of Plaintiff's protected class. Specifically, Plaintiff was paid less compensation than Caucasian (alternatively, "White") employees who performed the same duties and responsibilities, despite Plaintiff's superior skill, knowledge, education, training, and performance of those duties.

119. One comparator to Plaintiff, an individual named Zane, was a white male with less skill and experience than Plaintiff, but who was compensated at a higher rate than Plaintiff despite performing identical work.

120. Defendants' conduct was in violation of the New York City Human Rights Law.

121. Plaintiff's requests for relief are set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

A. That the practices of the Defendants complained of herein be determined and adjudged to be in violation of the rights of the Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*; the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 *et seq.*; the New York State Human Rights Law; and the New York City Human Rights Law prohibiting retaliation, hostile work environment, and disparate treatment discrimination in employment;

B. That judgment be entered in favor of Plaintiff against Defendants;

C. That the Plaintiff be awarded compensatory damages where available;

D. That the Plaintiff be awarded punitive damages;

E. That the Plaintiff be awarded pre-judgment and post-judgment interest;

F. That the Court award Plaintiff attorneys' fees and costs associated with this matter, including but not limited to expert fees' and costs;

G. That the Plaintiff be awarded all other amounts owed to him;

H. That the Court retain jurisdiction over Defendants until such time as it is satisfied that it has remedied the practices complained of and is determined to be in full compliance with the law;

Plaintiff further demands that he be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this complaint and to determine liability and damages.

Dated: March 18, 2020                                                  Respectfully submitted,

/s/ *Matthew L. Berman*

Robert J. Valli, Jr., Esq
Matthew L. Berman, Esq.
VALLI KANE & VAGNINI LLP
600 Old Country Road, Suite 519
Garden City, New York 11530
T: (516) 203-7180
F: (516) 706-0248
**ATTORNEYS FOR PLAINTIFF**